

08 CIV 3978

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOANNA DANUTA MARUSZAK

              Plaintiff,

v.

DARIUSZ ROBERT MARUSZAK

              Defendant

COMPLAINT

Civil Action No.

RECEIVED
APR 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## INDEX

PLAINTIFF'S COMPLAINT……………………………………………………………………3

I. THE PARTIES………………………………………………………………………….....3

    A. PLAINTIFF………………………………………………………………………….3
    B. DEFENDANT……………………………………………………………………....3

II. JURISDICTION AND VENUE……………………………………………………….....3

III. THE FACTS……………………………………………………………………………4

IV. WRONGFUL AND ACTIONABLE CONDUCT OF THE DEFENDANT………………13

    A. FIRST CAUSE OF ACTION – FRAUD……………………………………….....13

        a. DEFENDANT'S FRAUDULENT MISREPRESENTATIONS
           INVOLVING RISK OF LOSS…………………………….…………………13

        b. THE SCHEME TO DEFRAUD……………………………………………16

    B. SECOND CAUSE OF ACTION – FRAUDULENT INDUCEMENT TO
    CONTINUE THE MARITAL RELATIONSHIP………………………….…………....17

    C. THIRD CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY,
CONVERSION.................................................................................................................22

    D. FOURTH CAUSE OF ACTION – RECKLESS ENDANGERMENT………………23

1

E. FIFTH CAUSE OF ACTION – ASSAULT AND BATTERY............................25

F. SIXTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS...................................................................................................................25

V. PLAINTIFF'S DAMAGES................................................................................25

VI. CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST......................27

VII. JURY DEMAND...............................................................................................27

VIII. PRAYER FOR RELIEF.......................................................................................27

VERIFICATION.....................................................................................................29

LIST OF ANNEX AND EXHIBITS

AFFIDAVIT  OF PLAINTIFF JOANNA DANUTA MARUSZAK
DATED APRIL 22, 2008                                      EXHIBIT A

AFFIDAVIT OF ELZBIETA KOBERSTEIN
DATED MARCH 1, 2007                                      EXHIBIT B

ASSIGNMENT OF JÓZEF ZDZIEBŁOWSKI
DATED AUGUST 17, 2006                                    EXHIBIT C

DIVORCE DECREE DATED MARCH 23, 2006                      EXHIBIT D

DIVORCE DECREE DATED APRIL 4, 2006                       EXHIBIT E

TRANSCRIPT OF DIVORCE PROCEEDING DATED APRIL 4, 2006     EXHIBIT F

## PLAINTIFF'S COMPLAINT

Plaintiff Joanna Danuta Maruszak (hereinafter referred to as **"JOANNA")**, files this Complaint, complaining of Dariusz Robert Maruszak (hereinafter referred to as **"DARIUSZ"**) and alleges as follows:

### I.

### THE PARTIES

### A. PLAINTIFF

1. Plaintiff Joanna Danuta Maruszak is an individual resident in New York County, New York.

### B. DEFENDANT

2. Defendant Dariusz Robert MARUSZAK is an individual holding Polish citizenship, with a registered residential address at ul. Górnicza 88/1, 54-136 Wrocław, Poland. DARIUSZ is sued herein under federal and New York state law as the perpetrator of and direct participant in the fraudulent and other wrongful acts set forth below. A substantial part of the alleged events and omissions set forth below occurred in, or originated from, DARIUSZ's residence and principal place of business in New York County, New York during 2001 and 2002.

### II.

### JURISDICTION AND VENUE

3. Venue is proper in this district within the meaning of 28 U.S.C. 1391(a)(1) in that a substantial portion of the events giving rise to the claims iterated herein occurred in New York County, New York.

4. The amount in controversy herein exceeds the minimum jurisdictional requirements of this Court exclusive of interest and costs.

### III.

### THE FACTS

5. Plaintiff JOANNA brings this domestic tort action at this time and in this forum against her former spouse DARIUSZ based upon diversity, delayed discovery and duress.

6. Plaintiff JOANNA met Defendant DARIUSZ in or about May 1992 in Wrocław, Poland when she was a high school student and barely 19 years of age.

7. In September 1992 Defendant DARIUSZ began to court Plaintiff JOANNA and induced her to marry him.

8. The civil marriage of Plaintiff JOANNA and Defendant DARIUSZ took place on February 16, 1993 at the Urząd Stanu Cywilnego (Office of Vital Statistics) in Wrocław, Poland. Aff. Joanna ¶ 9, Exh. A. At the time of her marriage, Plaintiff was a high school student of full age, attending her last year of high school at Liceum Ogólnokształcące nr. XII im. Bolesława Chrobrego we Wrocławiu in Wrocław, Poland. Aff. Joanna ¶ 5, Exh. A.

9. Starting in September 1992 and taking advantage of her youth and complete inexperience in matters of the world typical at that time in barely post-communist Poland by representing, *inter alia*, that, as a result of complex relations with foreign investors and entities, (1) he had earned substantial funds while working in London and previously in Amsterdam and France, one of his partners died from a drug overdose, another partner perished in a car accident and DARIUSZ had become the beneficiary of trust deposits at the Bank of Cyprus in London,

United Kingdom with a balance of £20,000,000 (twenty million pounds Sterling) (the **"Bank of Cyprus Account"**); (2) that the trust property, under its terms, was to be released to him as beneficiary only on the condition of (i) completion of his 27th year of age (to occur on January 22, 1994) and (ii) being married at the time; (3) that he was the youngest member of the Polish Academy of Sciences, tasked with advanced research at the Instytut Niskich Temperatur Polskiej Akademii Nauk (Institute for Low Temperatures of the Polish Academy of Sciences). Defendant DARIUSZ asked Plaintiff to assist him with meeting the marriage condition and promised to share with her one-half of the £ 20,000,000 trust fund or £10,000,000 as a matter of marital property law upon receipt on or about January 22, 1994. Aff. Joanna ¶ 6, Exh. A.

10. Plaintiff's personal property at the time of her marriage included, among other things, the following principal assets: (i) an apartment in ul. Inowrocławska 3/42 in Wrocław, Poland, sold at an egregious undervalue at the time of 140 million old Polish złoty. Its fair market value today is believed to be PLN 250,000 or approximately $114,871; (ii) a savings account with Bank PKO in Wrocław, Poland with a balance of approximately 5,000 French Francs (approximately $1,206); (iii) an automobile of the make and model Fiat 126p with approximately 5,000 kilometers odometer reading, valued at the time at approximately $5,600; (iv) personal and family heirloom jewelry she had received as gifts and inheritance consisting of approximately 500 grams of gold, with a fair market value at the time of approximately $15,000 ("Jewelry"); and (v) furniture and other personal property with a total value at the time of approximately $1,250. Plaintiff's total personal property at the time of her marriage was therefore valued at approximately $137,927. Aff. Joanna ¶ 15, Exh. A.

11. Plaintiff's entire personal property at the time of marriage was either sold by Defendant DARIUSZ or, in the case of her apartment, at Defendant's direction, within the first six months of marriage at an egregious undervalue. The entirety of the proceeds of each sale was taken and spent exclusively by Defendant DARIUSZ for his own personal use and for other purposes including settlement of some of his personal debts without Plaintiff's prior consent. Defendant DARIUSZ justified his actions to Plaintiff at the time by explaining that the amounts he thus obtained were insignificant in any event as compared to his expectancy from the Bank of Cyprus Account. Aff. Joanna ¶ 16, Exh. A.

12. Immediately upon marriage, Defendant DARIUSZ required that Plaintiff, who had always been a very good student, quit high school approximately four months prior to her graduation and he did not permit her to continue and complete her education. Throughout the marriage, Defendant DARIUSZ required Plaintiff to be a homemaker and to abstain from any gainful employment. Defendant DARIUSZ justified his demands to Plaintiff at the time by explaining that whatever she would be able to earn would be utterly insignificant in any event when compared to interest income on his expectancy from the Bank of Cyprus Account. .Aff. Joanna ¶ 13, Exh. A.

13. In or about autumn 1993, Defendant DARIUSZ pretended to be at risk of dying from internal hemorrhaging and made arrangements to provide for Plaintiff in the event his death would occur prior to his ability to access the Bank of Cyprus Account by providing her with various instructions and passcodes to an account at UBS, a Swiss bank headquartered in Zurich, Switzerland (the **"UBS Account"**), which, according to Defendant DARIUSZ, contained an unspecified balance of several million United States Dollars derived from certain royalty payments

he had received abroad. Subsequent to his recovery, Defendant DARIUSZ, acting without Plaintiff's consent, secreted, concealed or destroyed and in any event effectively removed from Plaintiff's custody and control the records relating to the UBS Account. Aff. Joanna ¶ 17, Exh. A. Defendant DARIUSZ's unlawful conduct thus includes spoliation of evidence and is ongoing. Based on these actions, Plaintiff alleges that the Defendant is equitably estopped from asserting any defense of limitations.

14. In late 1993, Defendant DARIUSZ, who at that time was engaged in the creation of a UNIX-based internet network in Poland based in Wrocław, Szczecin, Poznań and other locations, represented in elaborate detail that both the Bank of Cyprus Account and the UBS Account had become the subject of legal disputes, that his entitlement to the balances held there was being challenged by certain foreign parties and that it would likely take several years to resolve the matter. Defendant DARIUSZ further represented that this development had rendered him virtually illiquid and that his immediate next task would be to raise funds for litigation from third parties. This would, on one hand, reduce his future expectancy but would also hopefully avoid loss of his entitlement altogether.

15. From approximately May 2001 until May 2005, Plaintiff witnessed Defendant DARIUSZ making to third parties in New York representations similar to those he had made to her regarding the balance of the Bank of Cyprus Account as well as ongoing litigation. Such representations were made specifically to Defendant DARIUSZ's legal advisor, consultant and business creditor Elzbieta Koberstein in Munich, Germany. Aff. Joanna ¶ 26, Exh. A. Aff. Koberstein ¶ 8, Exh. B.

16. Starting in 1994 and until 2005, Defendant DARIUSZ borrowed from Plaintiff's father, Mr. Józef Zdziebłowski $20,986 in the aggregate for the following purposes:

$5,208. equivalent in cash from his USD, GBP, FRF and EUR accounts;

$11,065 equivalent for telephone bills incurred by Defendant DARIUSZ in Poland;

$4,713 equivalent for replacement of furniture destroyed by Defendant DARIUSZ.

Aff. Joanna ¶ 18, Exh. A.

17. Subsequent to Defendant DARIUSZ's failure to repay this debt by the end of 2005, Plaintiff's father, Mr. Józef Zdziebłowski, assigned the claim to Plaintiff subsequent to Plaintiff's divorce, for collection as his successor in interest. Assignment of Józef Zdziebłowski, Exh. C.

18. In 1994, Defendant DARIUSZ fathered a child by another woman, Wakano Tanabe, a citizen of Japan, under the false promise that he intended to divorce Plaintiff and marry Wakano Tanabe. A baby girl, Subhadra Tanabe, was born of that relationship on or about April 22, 1995. Defendant DARIUSZ recognized the child before the Polish authorities but, on information and belief, substantially failed to pay effective child support. Aff. Joanna ¶ 22, Exh. A.

19. Subsequent to marriage, Plaintiff discovered that Defendant DARIUSZ had already fathered another child by the name of Rozalia Białomazur with another woman, Iwona Białomazur, born December 22, 1990. In this case, as with baby Subhadra Tanabe, Defendant DARIUSZ recognized the child before the Polish authorities but, on information and belief, substantially failed to pay effective child support.

20. Throughout the marriage, Defendant DARIUSZ regularly and habitually abused

alcohol during prolonged periods of time in significant proportions. During these drinking

binges, he destroyed furniture and caused severe damage to other personal property. Aff.

Joanna ¶¶ 19, 25, Exh. A.

21. On numerous occasions throughout the marriage, Defendant DARIUSZ seriously,

credibly and convincingly threatened Plaintiff's life and/or health by indicating, sometimes in

the presence of third parties, that he would cause her grave personal harm if she should fail

to comply promptly with his wishes. Aff. Joanna ¶ 24, Exh. A. Aff. Koberstein  ¶ 10, Exh. B.

22. During the night from December 1–2, 1998, Defendant DARIUSZ, under the

influence of alcohol, committed assault and battery against Plaintiff which resulted in a nasal

fracture, orbital hematomas on both sides, and a cranial contusion. Plaintiff was admitted to

the Second Surgical Clinic of the Medical Academy of Wrocław, Poland, on December 2,

1998 and was released only on December 7, 1998. The official explanation provided at the

time was that Plaintiff had suffered a "traffic accident". DARIUSZ would not take Plaintiff,

who at the time was uninsured, to the hospital until she would agree to support his "version"

of the events. In order to help Defendant DARIUSZ avoid arrest and criminal prosecution,

which would only have exposed Plaintiff to greater personal and economic hardships,

Plaintiff concurred with that explanation and did not file a criminal complaint against

Defendant DARIUSZ. Aff. Joanna ¶ 25, Exh. A.

23. From May 17, 2001 until February 20, 2002 Plaintiff lived with Defendant

DARIUSZ in New York City where Defendant DARIUSZ did business at the time. During

that time, Plaintiff requested information about the status of the legal proceedings involving

the Bank of Cyprus Account and the UBS Account. Defendant DARIUSZ represented that substantial progress had been made and although no final resolution had been reached as yet, he stated repeatedly that he was confident to have the matter resolved in the near future.

24. During that same period in New York from May 17, 2001 until February 20, 2002 Plaintiff witnessed Defendant DARIUSZ making similar representations as to large assets being indirectly under his control to other parties including without limitation attorneys Allan C. Schwartz, Alexander J. Putz, Ivo G. Caytas, and consultant and legal advisor Elzbieta Koberstein. Aff. Joanna ¶ 26, Exh. A. *See also* Aff. Koberstein ¶¶ 11,12,13,14, Exh. B.

25. On or about March 29, 2002 and until December 18, 2003, Defendant DARIUSZ was arrested, imprisoned, extradited to the United Kingdom and tried in London on charges of theft of $16 million and conspiracy to commit theft lodged by the British government in a major criminal case styled *R. v. Maruszak et al.* in the Crown Court of Southwark, London, England as the mastermind of eight co-defendants but was acquitted of all charges along with his co-defendants on technical grounds by directed verdict on or about December 19, 2003. The British government was consequently directed by judicial order to pay the expenses of Defendant DARIUSZ's legal defense.

26. Following his release from British custody, Defendant DARIUSZ returned to Wrocław, Poland and resumed the marriage with Plaintiff. After more than one year had passed since his acquittal without any revenue being generated through either gainful employment or bona fide business activities while Defendant DARIUSZ would also not permit Plaintiff to obtain an education of her own, Plaintiff announced to Defendant her intention to dissolve their marriage and to seek a divorce. Plaintiff's latest attempt at

10

amicable dissolution of the marriage failed between May 30, 2005 and June 2, 2005 because

Defendant DARIUSZ declared that he "would not grant her a divorce", "would not let her

have a life without him", and issued various other dangerous threats against Plaintiff, her 76-

year old father, Mr. Józef Zdziebłowski, and himself. Aff. Joanna ¶ 34, Exh. A.

27. On June 27, 2005 Plaintiff fled from her last marital domicile in ul. Piławska 9 #

3-A, 50-538 Wrocław, Poland, during a brief absence of Defendant DARIUSZ. She later

traveled to the United States using savings accumulated by her during the marriage from

personal gifts received without Defendant. DARIUSZ's knowledge. Aff. Joanna ¶ 35, Exh.

A. Plaintiff established residence in Las Vegas, Nevada and obtained there a judgment of

divorce subsequent to Defendant DARIUSZ's failure to enter an appearance. The Divorce

Decree dated March 23, 2006, Exh. D, has become final and non-appealable.

28. Because there were no children of the marriage, because there was no community

property nor community debt to divide that Plaintiff was aware of, and because there was no

reasonable expectancy of any spousal support likely to become available from Defendant

DARIUSZ, Plaintiff waived her claims to a division of marital property as well as to spousal

support. However, in so doing, Plaintiff, acting on the advice of counsel, did not waive her

tort claims since they are neither marital property nor can they be characterized as spousal

support. *See* Divorce Decree dated March 23, 2006, Exh. D.

29. Plaintiff has since become aware that Defendant DARIUSZ obtained a final and

absolute decree of Divorce from Family Court in Wrocław, Poland (Sąd Okręgowy we

Wrocławiu – Wydzial XIII Cywilny Rodzinny – Docket No. XIIIRC 2587/05) (Exh. E) by

making various false and misleading representations, including without limitation (i) that he

11

did not know how to contact JOANNA nor any of her relatives; (ii) that he did not know where his complaint could be served upon JOANNA; (iii) that he spent 13 years of the marriage with JOANNA living abroad and separate from JOANNA, and (iv) that JOANNA had refused to live with him abroad or in Poland, and (v) that he had maintained JOANNA during the entire marriage and that JOANNA had discouraged him from undertaking gainful employment; yet (vi) he represented to the Court to be a high net-worth investor of very large sums of money while having no income except for PLN 2,700 per month (approx. $1,240). *See* Transcript dated April 4, 2006, Exh. F.

30.  Throughout the marriage, Defendant DARIUSZ failed to disclose the extent and condition of his personal assets and liabilities to Plaintiff in a truthful and satisfactory manner. Independent of Defendant DARIUSZ, Plaintiff obtained evidence that Defendant DARIUSZ represented to third parties to have received 3.5 trillion external Yen from a Japanese company named Yoshimitsu Corporation under a Deed of Ownership contract dated January 13, 1998 of which Plaintiff now holds a copy and in which sum of money Defendant DARIUSZ holds a beneficiary interest unknown to Plaintiff through a British limited liability company named Equal Limited. Defendant DARIUSZ also holds an undetermined interest in two U.S. Treasury bearer securities in the face amount of $100 million each, with serial numbers L05159089A and L05169087A, which prima facie appeared to be original certificates, in Defendant DARIUSZ's possession and of which Plaintiff holds copies. To Plaintiff's knowledge, Defendant DARIUSZ does not personally own, nor did he own in the past, any real property, automobiles or other significant non-financial assets. However, Defendant directly or indirectly owns and controls a significant

position of shares in two Polish companies, ACM Spółka z o.o. and Advanced Capital

Management S.A., both of unknown net present value. Plaintiff has no certain knowledge of

Defendant DARIUSZ's liabilities. Aff. Joanna ¶ 31, Exh. A.

<div align="center">

**IV.**

**WRONGFUL AND ACTIONABLE CONDUCT OF THE DEFENDANT**

**A. FIRST CAUSE OF ACTION – FRAUD**

**a. DEFENDANT'S FRAUDULENT MISREPRESENTATIONS**

**INVOLVING RISK OF LOSS**

</div>

31. In initial discussions 1992, and throughout their marriage, Defendant DARIUSZ

represented at all times that he was the beneficiary of a trust set up by foreign interests in his favor

at the Bank of Cyprus, London, with a balance of £20,000,000 (twenty million pounds Sterling)

(the **"Bank of Cyprus Account"**). Aff. Joanna ¶ 6, Exh. A.

32. In the early 1990s, post-communist Poland was a very poor country suffering great

economic insecurity and instability together with high unemployment.

33. Plaintiff, at the time 19 years of age and in high school, was young, inexperienced as

the result of a very sheltered upbringing, and impressionable. She had been a good student

throughout much of her secondary education and was considered especially talented among her

peers in mathematics and science. Notwithstanding personal diligence and work ethic, Plaintiff's

chances at the time of earning in Poland a reasonably comfortable living by Western standards

without the benefit of special circumstances was in all reality remote.

34. Therefore, Plaintiff was highly vulnerable to representations such as the ones made to her by Defendant DARIUSZ when offering to share with her the balance of a £20,000,000 trust account upon receipt in or about early 1994 which, regardless of the long-term prospects of the marriage, would have secured the future not only of Plaintiff but of her aging parents as well as secured a comfortable living anywhere in the world. It was, therefore, not an irrational decision to accept her boyfriend Defendant DARIUSZ's marriage proposal under the aforementioned understanding and to take what appeared to be a limited risk of about one year to give this marriage a chance to develop into the scenario romantically portrayed by Defendant DARIUSZ or, if the fairy tale should fail to materialize as promised and expected, to part amicably and well provided for.

35. To substantiate the credibility of his promises and representations, Defendant DARIUSZ showed Plaintiff various documents which, to the extent of her ability to judge and verify at the time, appeared genuine and credible to her, and related an intriguing past involving work of national importance and governmental interest, and occasionally introduced her to associates and acquaintances of his who appeared to be corroborating various parts of Defendant DARIUSZ's representations. Aff. Joanna ¶ 6, Exh. A.

36. It added subjectively to the cogency of his proposal that Defendant DARIUSZ, although Polish by birth, represented to Plaintiff to have become a devotee of the Hindu faith and had been "initiated" as a Brahmin, living by strict religious principles and moral codes prohibiting, *inter alia*, any lies and misappropriations of the property of others, as well as setting high moral standards of responsibility for wives. Because Plaintiff could easily verify Defendant DARIUSZ's involvement with his religious community where, at the time at least, he appeared to be held in

14

significant esteem and regard, and because of his appearance to be comparably disinterested in material as opposed to spiritual matters, Plaintiff was unaware of any reason to mistrust Defendant DARIUSZ at the time.

37. Subsequent to marriage, Defendant DARIUSZ not only defaulted on his promise to deliver one-half of his £20,000,000 trust account balance in 1994 or any later date prior to the filing of this Complaint, he also failed to obtain any actual payment and to deliver upon request variously made by Plaintiff any copies of paperwork regarding the Bank of Cyprus Account or pertinent litigation. Aff. Joanna ¶¶ 30, 32, 37, Exh. A.

38. After 1995, Defendant DARIUSZ represented the same factual background to his legal adviser, consultant and business creditor Elzbieta Koberstein, specifically as to the existence, circumstances and balance of the Bank of Cyprus Account, *inter alia*. Aff. Koberstein ¶ 8, Exh. B.

39. Defendant DARIUSZ also represented to Elzbieta Koberstein that he had made arrangements to provide for Plaintiff in the event of his death in an amount exceeding his premarital inducement and subsequent promises, as well as for a security interest benefiting Koberstein's claims for Defendant DARIUSZ's indebtedness to her. Aff. Koberstein ¶ 8, Exh. B.

40. Defendant DARIUSZ knew that his and his associates' representations to the effect that DARIUSZ had control over, and access to, very substantial assets would be reasonably, justifiably and detrimentally relied upon. Thus the Defendant knowingly and intentionally placed Plaintiff in peril, and caused her injury.

### b. THE SCHEME TO DEFRAUD

41. As a proximate result of Defendant DARIUSZ's fraudulent representations regarding his background, education, training, assets, authority and personal and professional relationships, Plaintiff suffered damages in the amount of £10,000,000 (according to the present daily average interbank exchange rate $20,174,784) from early 1994 until present, plus 9 % statutory interest, reasonable attorney's fees, filing fees and reasonable costs of the suit.

42. The actionable conduct described herein, unless stated otherwise, refers to the conduct of Defendant DARIUSZ.

43. On information and belief, the foregoing misrepresentations of Defendant DARIUSZ, as set forth fully above, did in fact induce reliance on the misrepresentations, and did manipulate and influence Plaintiff to marry Defendant DARIUSZ and subsequently prevented her from discontinuing the marital relationship from January 1993 until June 2005.

44. Plaintiff reasonably and justifiably relied on the foregoing misrepresentations, and/or on the absence of a fraud perpetrated by Defendant DARIUSZ as set forth more fully above.

45. As a direct and proximate result of the pervasive fraud of Defendant DARIUSZ against Plaintiff, but also, in fact, against his entire social and professional environment including attorneys, investors, lenders, and other providers of services, as set forth above, Plaintiff has suffered injury and damages in that she was fraudulently induced to continue her marriage with Defendant DARIUSZ based upon an elaborate web of falsehoods and illusions. As a result, Plaintiff lost property, more than twelve years of her life, numerous opportunities, and the value of Defendant DARIUSZ's promises, in amounts according to proof at trial.

46. Plaintiff is therefore entitled to either fulfillment of Defendant DARIUSZ's promise of the equivalent of £10,000,000 plus interest from the date of the fulfillment of the alleged conditions to Defendant DARIUSZ's entitlement to the Bank of Cyprus Account balance, which was (i) marriage and (ii) completion of his 27th year of age, which occurred on January 22, 1994, or to judgment in the same amount plus interest from that same date for fraud in the inducement to marry. Because Plaintiff now considers the existence of the Bank of Cyprus Account extremely unlikely, a separate cause of action demanding fulfillment of the promise is dispensed with and Plaintiff limits her claim to a judgment for fraud.

WHEREFORE, Plaintiff prays for judgment against Defendant DARIUSZ for damages in the amount of £10,000,000 (according to the daily average interbank exchange rate on April 22, 2008 equivalent to $20,174,784) plus 9% statutory pre-judgment interest from January 22, 1994, costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

## B. SECOND CAUSE OF ACTION – FRAUDULENT INDUCEMENT TO CONTINUE THE MARITAL RELATIONSHIP

47. Plaintiff restates and incorporates herein the foregoing allegations contained in this Complaint.

48. During the marriage, Defendant DARIUSZ induced Plaintiff to continue the marital relationship despite numerous disappointments and discoveries of substantial falsehoods (1) by dissipating all of Plaintiff's personal property; (2) by obtaining and dissipating substantially all personal savings of Plaintiff's father, Mr. Józef Zdziebłowski; (3) by depriving Plaintiff of all educational and income-earning opportunities; (4) by depriving Plaintiff of substantially all social interaction and relationships independent of Defendant DARIUSZ; (5) by an elaborate web of

17

falsehoods and misrepresentations with intent to induce expectancies of substantial improvements of her quality of life in the future.

49. Whenever one of Defendant DARIUSZ's misrepresentations was approaching a point in time when the induced expectations either had to be fulfilled or would be flatly exposed as fiction, Defendant DARIUSZ, acting in concert with others, engineered successive incidents of "material adverse change" of a nature very difficult if not impossible to verify as a matter of practical realities.

50. Yet, substantially contemporaneously or in close proximity to an event of alleged material adverse change, Defendant DARIUSZ always also engineered the inducement of a new (and usually larger or at least equivalent) expectancy that, if it were to materialize, would, by any conceivable standard, resolve all reasonably likely future needs and issues of whomever in Defendant DARIUSZ's "inner circle" would have persevered throughout past hardships and would loyally have "kept the faith".

51. With the benefit of hindsight, it appears that this had been the modus operandi practiced by Defendant DARIUSZ throughout his entire adult and professional life.

52. Specifically, Defendant DARIUSZ induced Plaintiff to continue their marital relationship despite almost continuous and egregious material hardship and substantial setbacks on all levels and in every respect by representations Defendant DARIUSZ knew or had reason to know as falsehoods, that he knew would be relied upon by Plaintiff, and he knew Plaintiff would suffer damages as a result of such detrimental reliance, specifically by representing to Plaintiff the following: (1) from 1993 until approximately 1996: that he was actively engaged in litigation to overcome legal challenges to his entitlement to beneficial interest in the Bank of Cyprus Account

holding a balance of £20,000,000 as alleged herein; (2) in autumn 1993: that he was at grave risk of dying from internal hemorrhaging and needed to make arrangements to instruct and provide Plaintiff with access to the UBS Account as alleged herein; (3) in summer 1994: by moving Plaintiff to live for several months in Singapore by using, as was discovered later, funds either borrowed or obtained as an "investment" from third parties, in anticipation of completing exceptionally large financial transactions of a quasi-governmental nature; (4) in 1997: by moving Plaintiff to London for several months by using, as was discovered later, funds either borrowed or obtained as an "investment" from third parties, in anticipation of completing exceptionally large financial transactions of a quasi-governmental nature; (5) during early 1998: by distributing to Plaintiff and others certain amounts represented to be the proceeds of legitimate business activity but later discovered to be funds fraudulently obtained and adjudicated to be subject to restitution of over $40 million in the British civil case *Citadel Inc. v. Equal Limited*; (6) in May 2001 – February 2002: by moving Plaintiff to New York by using, as was discovered later, funds either borrowed or obtained as an "investment" from third parties, in anticipation of completing exceptionally large financial transactions of a quasi-governmental nature; (7) in January – June 2005: by moving Plaintiff to a new residence in Wrocław, Poland by using, as was discovered later, funds either borrowed or obtained as an "investment" from third parties, in anticipation of completing exceptionally large financial transactions with a view to creating in Poland a market for mortgage-backed securities and an innovative concept of financing consumer goods.

53. None of the promises or projections made by Defendant DARIUSZ ever materialized for Plaintiff or for anyone else in Defendant DARIUSZ's environment. Each and every one of the promises and representations made by Defendant DARIUSZ, did, in fact, substantially enlarge his

indebtedness to unpaid creditors because of the need to finance at least some occasional appearances of success in order to maintain Defendant DARIUSZ's appearance of credibility, which was the lifeblood of his modus operandi. His house of cards built on false promises and representations also exposed him and his associates to ever-increasing risks of legal repercussions. Each of the situations thus created made it more difficult for Plaintiff to keep out as far as possible from involvement at any level in the social and business relationships of Defendant DARIUSZ.

54. As a result of the dilemma of gaining increasing clarity about the absence of any reality or foundation to Defendant DARIUSZ's representations on one hand and Plaintiff's total deprivation of property, family support, educational qualifications and social contacts on the other hand, Plaintiff became increasingly aware of the inescapability of the fact that Defendant DARIUSZ and any business associate in his wake was firmly set on an inexorable collision course with the inevitable consequences of a social and professional lifestyle based solely on a modus operandi relying on skillful misrepresentations on a level of exceptionally large numbers and resulting expectations of his counterparties.

55. As a direct and proximate consequence of developments alleged herein that were arranged and controlled solely by Defendant DARIUSZ, and as a result of her trust and reliance upon him, Plaintiff unintentionally allowed herself to become virtually totally dependent on a man she had no longer any respect for, much less any emotional ties in common. Plaintiff was left to the realization that, as a result of her detrimental reliance upon the entirely baseless promises and representations of Defendant DARIUS, she lost not merely all personal property along with substantially all her father's personal savings, but also without doubt had wasted more than twelve of the best years of her life under circumstances that cannot, in realistic terms, be described as

anything short of hell, including physical violence as well as emotional distress and severe abuse at the hands of a man with clear sociopathic and likely psychopathological characteristic as set forth more fully below.

56. It is no longer possible to reasonably reconstruct, much less substantiate with credible evidence, the various promises made by Defendant DARIUSZ, aside from threats and violence, to induce Plaintiff to continue the marital relationship. Amounts variously promised could reach very high amounts, *see* Aff. Koberstein ¶¶ 11, 12, 13, 14, Exh. B. Because it makes no sense for Plaintiff in the light of likely obstacles to enforcement of judgment to attempt to substantiate the highest amount promised for which evidence may be adduced, and because it is apparent from the nature of this fraud that failures to perform as promised are virtually always "compensated for" by greater promises which, in turn, remain equally unfulfilled, Plaintiff limits her claim to the Defendant DARIUSZ's original premarital promise of £10,000,000 on or about January 22, 1994 plus interest and cost.

57. Defendant DARIUSZ maintained the scheme, artifice and device to defraud Plaintiff until at least May 2005. As late as March 9, 2005, as part of his scheme to defraud creditors, Defendant DARIUSZ, and without making any disclosure of marital assets to Plaintiff, requested and directed that Plaintiff execute a notarized agreement separating their marital property for the purported objective of creating a separate property estate for Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant DARIUSZ for damages in the amount of £10,000,000 (according to the daily average interbank exchange rate on April 22, 2008 equivalent to $20,174,784) plus pre-judgment interest from January 22, 1994, costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

## C. THIRD CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY, CONVERSION

58. Plaintiff restates and incorporates herein the foregoing allegations contained in this Complaint.

59. As Plaintiff's spouse, Defendant DARIUSZ had a fiduciary duty to administer Plaintiff's property prudently and with due regard to the interests of Plaintiff. Instead, Defendant DARIUSZ dissipated all of Plaintiff's property of approximately $136,677 within the first six months of marriage by disposing of it at either no consideration or at an egregious undervalue to his friends and family and spent the entirety of the proceeds not on family expenses but for his own private and separate purposes. On information and belief, Defendant DARIUSZ did that as well as require Plaintiff to withdraw from high school only months prior to graduation in order to ensure her economic dependency on Defendant DARIUSZ who well knew that he was unable to fulfill his fraudulent and baseless promise used to induce Plaintiff to marry him, nor any similar promise made during the marriage to induce her to continue the marital relationship. Aff. Joanna ¶¶ 13, 16, Exh. A.

60. From 1994 until 2005, Defendant DARIUSZ borrowed from Plaintiff's father, Mr. Józef Zdziebłowski, substantially all his personal savings in the amount of approximately $20,986 to cover frivolously incurred "business expenses", primarily telephone bills for personal calls made by Defendant DARIUSZ world-wide, and to replace furniture recklessly destroyed or disposed of. Plaintiff sues to recover this amount as her father's successor in interest. Aff. Joanna ¶ 18, Exh. A. Assignment of Józef Zdziebłowski, Exh. C.

61. Defendant DARIUSZ never paid Plaintiff nor her predecessor in interest anything. In so doing, Defendant DARIUSZ committed the tort of conversion by obtaining personal property

of another without just cause based on false promises he never intended to keep nor actually did keep.

WHEREFORE, Plaintiff prays for judgment against Defendant DARIUSZ for damages in the amount of $158,913 plus pre-judgment interest from the date of filing of this Complaint, costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

## D. FOURTH CAUSE OF ACTION – RECKLESS ENDANGERMENT

62. Plaintiff restates and incorporates herein the foregoing allegations contained in this Complaint.

63. Defendant DARIUSZ recklessly endangered the health and well-being of Plaintiff by physical violence including assault and battery (Aff. Joanna ¶ 25, Exh. A), by credible threats against her life and/or health (Aff. Joanna ¶ 24, Exh. A), and by forcing her into a life of extreme instability and unpredictability by compelling her to change the marital domicile as often as 21 times in 12 years. (Aff. Joanna ¶ 12, Exh. A), resulting in a complete deprivation and break-down of her social ties.

64. Defendant DARIUSZ recklessly endangered the economic viability and well-being of Plaintiff by depriving her of all personal assets (Aff. Joanna ¶¶ 16, Exh. A), by depriving her father, Mr. Józef Zdzieblowski, age 76, of substantially all his retirement savings by reckless and fraudulent borrowing under false pretenses (Aff. Joanna ¶ 18, Exh. A) and by forcing Plaintiff to withdraw against her will from high school only months prior to graduation (Aff. Joanna ¶ 13, Exh. A), forcing her into a life as a homemaker and disallowing her to continue any education leading to marketable skills. As late as June 2005, Defendant DARIUSZ refused to consider

23

allowing Plaintiff to obtain an education in Wrocław, Poland. (Aff. Joanna ¶ 34, Exh. A).

65. Up to her withdrawal from high school, Plaintiff had consistently earned top grades in mathematics and science at a well-regarded state high school, Liceum Ogólnokształcące nr. XII im. Bolesława Chrobrego we Wrocławiu in Wrocław, Poland. Prior to marriage, it had always been Plaintiff's intention to study mathematics at the University of Wrocław, an accredited and highly renowned state university established in 1702 as The Leopoldine Academy by Emperor Leopold I Habsburg, counting among its alumni 3 Nobel laureates (of 10 Nobel laureates hailing from Wrocław altogether). Higher education at the university level is free in Poland to qualified students as a matter of law. (Aff. Joanna ¶ 14, Exh. A) and, based on past performance, there can be no reasonable doubt that Plaintiff would have successfully completed her studies unless prevented by Defendant DARIUSZ. (Aff. Joanna ¶¶ 13, 14, Exh. A).

66. As a result of Defendant DARIUSZ's actions preventing Plaintiff from completing her education and obtaining qualifications for marketable skills, Plaintiff is now forced to obtain equivalent education at a comparable level of qualification in New York at considerably higher expense, amounting to approximately $197,600 for a four-year degree based on $49,400 per year in 2008 at Columbia University in the City of New York. This claim is not in lieu of waived spousal support but represents tort-based damages resulting from the reckless and intentional deprivation of an opportunity readily available to Plaintiff otherwise in Poland at no cost.

WHEREFORE, Plaintiff prays for judgment against Defendant DARIUSZ for damages in the amount of $197,600 plus pre-judgment interest from the date of filing of this Complaint, plus costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

### E. FIFTH CAUSE OF ACTION – ASSAULT AND BATTERY

67. Plaintiff restates and incorporates herein the foregoing allegations contained in this Complaint.

68. During the night from December 1–2, 1998, Defendant DARIUSZ, under the influence of alcohol, committed assault and battery against Plaintiff which, as evidenced by her medical records, resulted in a nasal fracture, orbital hematomas on both sides, and a cranial contusion. Plaintiff was admitted to the Second Surgical Clinic of the Medical Academy of Wrocław, Poland, on December 2, 1998 and was released only on December 7, 1998. It shows particular moral turpitude, unconscionability and complete disregard for the welfare of an injured person that Defendant DARIUSZ caused medical treatment to be withheld from Plaintiff until she consented to falsely representing a version of the events that did not expose him to risk of criminal prosecution. (Aff. Joanna ¶ 25, Exh. A).

WHEREFORE, Plaintiff prays for judgment against Defendant DARIUSZ for $1,000 nominal damages plus interest and costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

### F. SIXTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69. Plaintiff restates and incorporates herein the foregoing allegations contained in this Complaint.

70. By depriving her of all assets, educational opportunities, parental means of support, social contacts, committing assault and battery, threatening her life and health repeatedly on a constant basis, and literally holding Plaintiff comparable to a prisoner during the marriage in

25

excess of twelve years, Defendant DARIUSZ intentionally inflicted upon Plaintiff severe emotional anguish and distress.

WHEREFORE, Plaintiff prays for judgment against Defendant DARIUSZ for damages in the amount of $200,000 plus pre-judgment interest from the date of filing of this Complaint, costs, disbursements, reasonable attorney fees, and such other relief as this Court deems just.

<div align="center">

**V.**

**PLAINTIFF'S DAMAGES**

</div>

71. Damages include but are not limited to the following:

a. As the result of Defendant's conduct described above, Plaintiff was injured in her property .

b. Plaintiff seeks restitution for her actual damages as follows:

- For Fraud                                                 $20,174,784

with 9% statutory interest from January 22, 1994

- For Breach of Fiduciary Duty and Conversion              $158,913

with 9% statutory interest from January 22, 1994

- For Reckless Endangerment                                $197,600

with 9% statutory interest from January 22, 1994

- For Assault and Battery                                  $1,000

with 9% statutory interest from December 1, 1998

- For Intentional Infliction of Emotional Distress         $200,000

with 9% statutory interest from the date of this Complaint

c. Plaintiff seeks punitive and exemplary damages in the maximum amount authorized by New York law in order to punish and deter the outrageous conduct taken in heedless and reckless disregard for the property of Plaintiff and, as a result of Defendants' conscious indifference to the rights, welfare, property interests and safety of Plaintiff in violation of the laws of the State of New York, and the United States.

## VI.

## CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

72. Plaintiff herein claims prejudgment and post-judgment interest in accordance with applicable law.

## VII.

## JURY DEMAND

73. Plaintiff hereby requests and demands a trial by jury.

## VIII.

## PRAYER FOR RELIEF

74.  WHEREFORE, Plaintiff prays for the following relief:

1.      For judgment in favor of Plaintiff against the Defendant;

2.      For general damages in the amount of $20,732,297 plus interest according to proof at trial;

3.      For consequential damages, according to proof at trial;

4.      For exemplary and punitive damages, according to proof at trial;

5.      For all other damages permitted by law, according to proof at trial;

6.      For expert witness fees;

7.    For reasonable and actually paid attorney's fees;

8.    For costs for copies of depositions;

9.    For costs of court;

10.   For all other and further relief that the Court deems just and proper.


Dated: New York, New York          Respectfully submitted,

     April 22, 2008

                               Ivo George Caytas
                               Caytas & Associates
                               146 West 57th Street
                               New York, N.Y. 10019-3301
                               Telephone: (917) 805-4120
                               Telecopier: (917) 591-9340
                               Email: ivocaytas@yahoo.com
                               Attorney for Plaintiff

## VERIFICATION

STATE OF NEW YORK      )
                                ) ss.:
COUNTY OF NEW YORK   )

Joanna Danuta Maruszak, being duly sworn, deposes and says:

I am the plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true to my own knowledge, except as to the matters stated to be alleged upon information and belief, and, as to those matters, I believe them to be true.

Dated: April 22, 2008

_____
Joanna Danuta Maruszak

Sworn to and subscribed before me
this 22nd day of April 2008

_____
Notary Public                                                                                    [SEAL]

My commission expires: 01-22-2011

ALEXANDER MILENKOVIC
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01-MI6053850
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES 01-22-2003-2011

29

**EXHIBIT A**

**AFFIDAVIT OF PLAINTIFF JOANNA DANUTA MARUSZAK
DATED APRIL 22, 2008**

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

## **A F F I D A V I T**

Before me, the undersigned notary public, on this twenty-second day of April 2008, personally came Joanna Danuta Maruszak, born January 8, 1973 in Wrocław, Poland, and, having been duly sworn, deposes and says:

1. My name is Joanna Danuta Maruszak. I am of full age.

2. I have personal knowledge of all facts herein stated except those stated to have been made upon information and belief, and as to those facts, I believe them to be true. I am aware of the penalties of perjury.

3. I was born on January 8, 1973 in Wrocław, Poland.

4. I am a citizen of Poland and a lawful resident of the State of New York.

5. I attended Liceum Ogólnokształcące nr. XII im. Bolesława Chrobrego we Wrocławiu, a renowned State High School in Wrocław, Poland, from September 1990 – January 1993 as a high school student.

1

6. I met Dariusz Robert Maruszak ("MARUSZAK") in May 1992 in Wrocław,
Poland. In late September 1992, MARUSZAK began to court me with a view
toward a romantic relationship which developed over the subsequent months. He
represented that he was the youngest member of the Polish Academy of Sciences
to date, tasked with advanced research at the Instytut Niskich Temperatur Polskiej
Akademii Nauk (Institute for Low Temperatures of the Polish Academy of
Sciences), something of a mathematical and scientific youth prodigy, and had
done substantial work abroad resulting in significant intellectual property rights of
international importance, related to crystallography research and related computer
programming. He appeared knowledgeable about the area and knew his way
around the Institute for Low Temperatures. Later he explained that he had become
the beneficiary of a large trust account abroad as a result of his work. In January
and early February 1993, MARUSZAK asked me to marry him and induced me to
agree by clarifying that, as a practical matter, (1) he had earned substantial funds
while working in London and previously in Amsterdam and France, one of his
partners died from a drug overdose, another partner perished in a car accident and
MARUSZAK had become the beneficiary of trust deposits at the Bank of Cyprus
in London, United Kingdom with a balance of £ 20,000,000 (twenty million
pounds Sterling) (the **"Bank of Cyprus Account"**); (2) that the trust property,
under some of its terms intended to protect him from squandering the trust assets
and to create an incentive for a "stable life environment", was to be released to
him as beneficiary only on the condition of (i) completion of his 27th year of age
(to occur on January 22, 1994) and (ii) being married at the time. MARUSZAK

2

suggested that it would be the best for everyone involved if I, as his girlfriend at the time, could "assist him" with meeting the marriage condition and promised to share with me one-half of the £ 20,000,000 trust fund or £10,000,000 under applicable marital property law upon receipt of the trust property as beneficiary on or about his 27th birthday on January 22, 1994. He showed me documents which appeared to be genuine and credible to me at the time and introduced me to associates who each appeared to corroborate in social conversation, directly or by implication, various parts of MARUSZAK's representations made to me.

7.  Because I was quite young and inexperienced in such matters, I sought advice on this decision from my family and friends. While the consensus weighed in somewhat against marriage while still in high school, early marriage was the norm for girls in Poland at the time (and to a lesser extent it still is today) and, absent material adverse information known to anybody about MARUSZAK at the time, the prevailing view was that accepting the proposal did not present too much of a risk in light of the fact that I could, if the marriage should fail to meet my expectations on a personal level, part amicably and yet well provided for at any time starting from a date approximately not more than one year away.

8.  Following the collapse of communist government in Poland after the demise of the Berlin Wall on November 9, 1989, there was great economic and political uncertainty and instability in all of Eastern Europe, including Poland. While inflation had soared to over 80% on average per year, the previous, if sorely

3

deficient, security of employment, housing, health care and other matters hailed as

the accomplishments of communism ceased to exist. There was great instability

und rampant uncertainty of any previously held expectations and a breakdown of

people's ability to develop any rational life and career plans. The "average wage"

in Poland at the time, an important economic indicator upon which, for example,

health insurance premiums and many other public charges are based, was at the

time $186,03 per month before taxes, or 2,935,000 old Polish złoty

(http://www.stat.gov.pl/dane_spol-gosp/praca_ludnosc/mies_wynagr/index.htm as

published by the Polish Main Statistical Office (Główny Urząd Statystyczny)

applying the exchange rate of January 4, 1993 $1= Zł.15,777, *see*

http://www.nbp.pl/kursy/archiwum/1993.xls, as published by the Polish Central

Bank (Narodowy Bank Polski). The offer of obtaining, through marriage, a

beneficial interest in a trust fund of £10,000,000 per person (according to the

daily average interbank exchange rate on April 22, 2008 equivalent to

$20,174,784) was, therefore, a prospect very difficult if not impossible for me to

resist. I thus accepted MARUSZAK's marriage proposal.


9.  On February 16, 1993, I was married in Wrocław, Poland to Dariusz Robert

    Maruszak, born January 22, 1967, then and now a citizen of Poland, whose

    present address registered with the Polish authorities is at ul. Górnicza 88/1, 54-

    136 Wrocław, Poland.


10. No children were born of my marriage.


4

11. The Polish national personal identification number (or PESEL number) of my former husband Dariusz Robert Maruszak is 67012202992.

12. MARUSZAK's and my 21 marital domiciles were (in chronological order):

| | |
|---|---|
| (1) ul. Inowrocławska 3/42, 53-653 Wrocław, Poland | February 1993-May 1993 |
| (2) ul. Czarnieckiego 80/8, 53-627 Wrocław, Poland | May 1993–August 1993 |
| (3) ul. Wodna 24/1, 61-781 Poznań, Poland | August 1993–December 1993 |
| (4) ul. Lenartowicza 5, 06-100 Pułtusk, Poland | December 1993–April 1994 |
| (5) ul. Strzegomska 276/9, 54-432 Wrocław, Poland | April 1994–June 1994 |
| (6) Pan Pacific Singapore Hotel, 7 Raffles Blvd, Marina Square, Singapore 039595 | June 1994–August 1994 |
| (7) ul. Strzegomska 276/9, 54-432 Wrocław, Poland | August 1994–July 1996 |
| (8) Pension "Zur Sonne", Hohenlindner Strasse 9, 85622 Feldkirchen/München, Germany | July 1996–February 1997 |
| (9) ul. Strzegomska 276/9, 54-432 Wrocław, Poland | February 1997–March 1997 |
| (10) ul. Komandorska 84/6, 53-345 Wrocław, Poland | March 1997–May 1997 |
| (11) 12 Knighthead Point, Westferry Road, London E14 8NT, UK | May 1997–April 1998 |
| (12) 257 North Block, The County Hall, 1D Belvedere Road, London SE1 7GH, UK | April 1998–June 1998 |
| (13) ul. Komandorska 84/6, 53-345 Wrocław, Poland | June 1998–January 1999 |
| (14) ul. Strzegomska 276/9, 54-432 Wrocław, Poland | January 1999–October 1999 |
| (15) Hotel "Bauer", Münchner Strasse 6, 85622 Feldkirchen/München, Germany | October 1999–January 2000 |
| (16) ul. Strzegomska 276/9, 54-432 Wrocław, Poland | January 2000–December 2000 |
| (17) ul. Górnicza 88/1, 54-136 Wrocław, Poland | December 2000–May 2001 |
| (18) The New York Palace Hotel, 455 Madison Ave. | |

5

| | |
|---|---|
| New York, NY 10022-6809, U.S.A. | May 2001–November 2001 |
| (19) 641 Fifth Avenue, Penthouse 5<br>New York, NY 10022, U.S.A. | Nov. 2001–February 2002 |
| (20) ul. Strzegomska 276/9, 54-432 Wroclaw, Poland | February 2002–March 2005 |
| (21) ul. Pilawska 9/3A, 50-538 Wroclaw, Poland | March 2005 –May 2005 |

13. Immediately upon marriage, MARUSZAK required that I quit high school approximately three months prior to graduation. Subsequently, he did not permit me to continue and complete my education. Throughout my marriage, MARUSZAK required me to be a homemaker and to abstain from gainful employment. MARUSZAK justified his demands to me at the time by explaining that whatever I would be able to earn would be insignificant in any event as compared to interest income on his expectancy from the Bank of Cyprus Account.

14. Enrolment and education at State Universities (which, to date, are the principal source of quality high-level education nationwide, in the absence of well-regarded private universities) is substantially free of charge in Poland aside from negligible administrative fees. Based on my performance record in high school, no reasonable doubt exists that I would have completed tertiary education at a Polish State university successfully if I had been permitted by MARUSZAK to graduate high school and enroll.

15. My personal property at the time of my marriage (February 16, 1993) included, among other things, the following principal assets: (i) an apartment in ul.

6

Inowrocławska 3/42 in Wrocław, Poland, sold at the time at a substantial

undervalue for 140 million old Polish złoty. Its present value today is estimated at

PLN 250,000 or approximately $114,871; (ii) a savings account with Bank PKO

in Wrocław, Poland with a balance of approximately 5,000 French Francs

(approximately $1,206); (iii) an automobile of the make and model Fiat 126p with

approximately 5,000 kilometers odometer reading, valued at the time at

approximately $5,600; (iv) personal and family heirloom jewelry of

approximately 500 grams of gold, with a fair market value at the time of

approximately $15,000 ("Jewelry"); and (v) furniture and other personal property

with a total value at the time of approximately $1,250. My total personal property

at the time of my marriage was therefore valued at approximately $137,927.

16. My entire personal property at the time of marriage was either sold by

MARUSZAK or, in the case of my apartment, at MARUSZAK's direction, within

the first six months of marriage at an egregious undervalue. The entirety of the

proceeds of each sale was taken and spent exclusively by MARUSZAK for his

own personal use and purposes including settlement of some of his personal debts

without my prior consent. MARUSZAK justified his demands to me at the time

by explaining that whatever I would be able to earn would be insignificant in any

event as compared to interest income on his expectancy from the Bank of Cyprus

Account.

17. In or about autumn 1993 in Poznań, Poland, MARUSZAK pretended to be at risk of dying from internal hemorrhaging and made arrangements to provide for me in the event his death would occur prior to his ability to access the Bank of Cyprus Account by providing me with various instructions and passcodes to an account at UBS, a Swiss bank headquartered in Zurich, Switzerland (the **"UBS Account"**), which, according to MARUSZAK at the time, contained an unspecified balance of several million United States Dollars derived from certain royalty payments he had received abroad. Subsequent to his recovery, the papers relating to the UBS Account disappeared and were nowhere to be found.

18. Starting in 1994 and until 2005, MARUSZAK borrowed from my father, Mr. Józef Zdziebłowski, substantially all his retirement savings accumulated in various FOREX-account in USD, GBP, FRF and EUR in the aggregate amount of $20,986 for the following purposes: (1) $5,208 equivalent in cash from his USD, GBP and FRF and EUR accounts; (2) $11,065 equivalent for telephone bills incurred by MARUSZAK in Poland; (3) $4,713 equivalent for replacement of furniture. In the case of international telephone bills, MARUSZAK simply incurred them and left them behind when he departed on his business trips, resulting in subsequent suspension of services and additional consequences in Poland. In exchange for these borrowings, MARUSZAK promised to give to my father $100,000 at an unspecified later date when he would have taken possession of his detained assets, in order to secure a more comfortable retirement. No payment was ever made to my father.

8

19. Throughout my marriage, MARUSZAK regularly and habitually abused alcohol and controlled substances including without limitation marijuana, hashish, LSD, hallucinogenic mushrooms, amphetamine, cocaine and ecstasy during prolonged periods of time in significant proportions. For example, for six months from June 1998 until November 1998, MARUSZAK was almost constantly under the influence of alcohol or controlled substances. At least once every two months on average, MARUSZAK drank to the point of losing consciousness. During these drinking binges, MARUSZAK behaved toward me in an abusive, threatening and aggressive manner, breaking furniture and installations and causing other damage to personal property.

20. Throughout my marriage, MARUSZAK threatened me regularly and habitually with physical violence in public as well as in private.

21. Throughout my marriage, MARUSZAK engaged in extramarital sexual relations with at least 8 other women and even represented me to some of them as his "sister".

22. During my marriage, MARUSZAK had a child, Subhadra Tanabe, born on or about April 22, 1995, by another woman, Wakano Tanabe, a citizen of Japan. MARUSZAK recognized the child before the Polish authorities.

9

23. On various occasions throughout my marriage, including without limitation the time periods listed below, MARUSZAK was abroad and absent from the marital domicile and he failed to provide me during those times with even elementary spousal support. These periods of absence totaling 5 years and 8 months during which I lived for the most part with my retired father, were as follows:

03-01-94 – 06-16-94
08-21-94 – 02-16-95
10-04-95 – 07-11-96
09-14-96 – 01-06-97
03-13-97 – 05-23-97
01-03-98 – 04-22.98
12-06-98 – 10-26-99
02-25-00 – 03-13-00
10-22-00 – 05-17-01
02-21-02 – 12-19-03

24. On numerous occasions throughout my marriage, MARUSZAK seriously, credibly and convincingly threatened my life and/or health by indicating that he would cause me grave personal harm if I should fail to comply promptly with his wishes.

25. During the night from December 1–2, 1998, MARUSZAK, under the influence of alcohol, committed assault and battery against me that resulted in a nasal fracture, orbital hematomas on both sides, and a cranial contusion. As a result, I was admitted to the Second Surgical Clinic of the Medical Academy of Wrocław, Poland, on December 2, 1998 and was released only on December 7, 1998. The official explanation provided at the time was that I had suffered a "traffic accident". In order to secure my cooperation with that version, MARUSZAK kept

10

me without treatment until late the next day, until he had reassured himself I would not pose a risk to his liberty interests. I had no health insurance at the time and was dependent on MARUSZAK for the coverage of medical expenses in cash. In order to help him avoid arrest and criminal prosecution, but quite frankly much more so in order to finally receive medical treatment, I concurred with that explanation and did not file a criminal complaint against MARUSZAK.

26. From December 2000 until September 2002, MARUSZAK resided and did business in New York City, first at the New York Palace Hotel, where I joined him in May 2001, and subsequently at a penthouse apartment in Olympic Tower, where he made representations similar to those made to me for the purpose of inducing me to marry him also to other parties including without limitation attorneys Allan C. Schwartz, Alexander J. Putz, Ivo G. Caytas, consultant and legal advisor Elzbieta Koberstein, in each case representing that certain very substantial assets were directly or indirectly under his control and that he held a beneficial interest in them.

27. During the time between March 29, 2002 and his release on December 19, 2003, MARUSZAK was incarcerated at the Metropolitan Correctional Center in New York City and later extradited by the United States on suspicion of theft of $16 million and conspiracy upon a warrant issued for his arrest by the Southwark Crown Court in London, United Kingdom. He was, however, acquitted of all

charges by directed verdict and the British government was ordered to pay the expenses of his legal defense.

28. MARUSZAK represented himself in public to be a mathematician with a doctorate degree. However, throughout my marriage I never became aware of any evidence of MARUSZAK having earned any academic degree in any subject from any institution of higher learning anywhere.

29. MARUSZAK represented himself in public to be a financial engineer who had worked for the Bank of Japan and other Japanese banks including the Bank of Tokyo. I am unaware of evidence of such employment. To my knowledge, MARUSZAK does not understand or speak the Japanese language.

30. Throughout our marriage, MARUSZAK failed to disclose the extent and condition of his personal assets and liabilities to me in a truthful and satisfactory manner.

31. I became inadvertently aware during my marriage of the following assets: MARUSZAK represented to have received 3.5 trillion external Yen from a Japanese company named Yoshimitsu Corporation under a Deed of Ownership contract dated January 13, 1998 which I have seen and in which sum of money he holds a beneficiary interest unknown to me. MARUSZAK also holds two U.S. Treasury bearer securities in the face amount of $100 million each, with serial

12

numbers L05159089A and L05169087A, of which I saw what appeared to be original certificates at the last marital residence as late as May 2005, and made copies at the time. I have no certain knowledge of MARUSZAK's liabilities.

32. The promise of delivering to me any portion of MARUSZAK's Bank of Cyprus Account, the UBS Account, or any other significant payment for that matter, was never fulfilled by or on behalf of MARUSZAK, even in part. In fact, I did not acquire any marital assets during my marriage with MARUSZAK, whereas I suffered a very significant dissipation of my personal, *i.e.,* not marital, property by the unauthorized and unlawful actions of my husband.

33. Having to experience the reckless and fraudulent complete dissipation of my property by MARUSZAK, the reckless and fraudulent complete dissipation of my aged and retired father's life savings, deprivation of all educational opportunities for a period of more than twelve years, physical violence as well as threats to my life and health and exposure to de-facto total and complete economic dependency on the party who proximately and intentionally caused me to face this desperate situation without any fault of my own aside from a degree of youthful naivity very common among young women in post-communist Poland at the time, I suffered very severe emotional anguish and distress, resulting in post-traumatic stress symptoms to this day, such as recurrent nightmares, anxiety attacks, insomnia, nervous exhaustion, feelings of guilt and inadequacy and other symptoms

consistent with and typical for exposure to a hostile and unstable environment such as the one created by MARUSZAK.

34. My most recent attempt at amicable dissolution of my marriage failed between May 30, 2005 and June 2, 2005 when MARUSZAK declared that, aside from the fact that he "would never allow me an education", he "would not grant me a divorce", "would not let me have a life without him", and issued various threats against me, my 78-year old father, Mr. Józef Zdzieblowski, and himself.

35. On June 27, 2005 I fled from the last marital domicile in ul. Pilawska 9 # 3-A, 50-538 Wroclaw, Poland, during a brief absence of MARUSZAK. I later traveled to the United States using savings accumulated during my marriage from gifts received without MARUSZAK's knowledge.

36. Beginning in October 1, 2005 and until January 8, 2006, I resided at Las Vegas, County of Clark, State of Nevada. From January 8, 2006 and until present, I reside at New York, County of New York, State of New York.

37. None of the promises made by MARUSZAK regarding any payments from, or even so much as access to, the Bank of Cyprus Account, the UBS Account, or the $100,000 promised to be given to my father in consideration of personal debts incurred were ever fulfilled, even in part.

14

FURTHER AFFIANT SAYETH NOT.

_____
Joanna Danuta Maruszak

Sworn to and subscribed before me this twenty-second day of April 2008.

_____
Notary Public                                                    [SEAL]

My commission expires: ⊘/· 2 2-  2o//

ALEXANDER MILENKOVIC
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01-MI6053850
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES 01-22-2003  2o //

15

# EXHIBIT B

**AFFIDAVIT OF ELZBIETA KOBERSTEIN
DATED MARCH 1, 2007**



| | | |
|---|---|---|
| FEDERAL REPUBLIC OF GERMANY | ) | |
| CITY OF MUNICH | ) | ss.: |
| CONSULATE OF THE UNITED STATES OF AMERICA | ) | |

## **AFFIDAVIT**

Elzbieta Koberstein, being duly sworn, deposes and states as follows:

1. My name is Elzbieta Koberstein. I am of full age and reside in Munich, Germany.

2. I am unrelated to the parties in this action.

3. I have personal knowledge of the facts stated herein, except for statements made upon information and belief, and as to those statements, I believe them to be true and accurate.

4. I have read the complaint and plaintiff's affidavit in the case styled *Maruszak v. Maruszak et al.*, and I believe the statements made therein to be true and correct.

5. My principal professional qualifications are as follows: I obtained a four-year degree in law in from the University of Warsaw, Poland. Since April 1992 I have been a managing director and major shareholder since May 1991 of Depol Trading GmbH, a German privately held limited liability company engaged in advising and structuring international business transactions which activity at various times reached a turnover of approximately $4,000,000. In this capacity, I have successfully completed a variety of business and management consulting mandates for major individuals and corporate entities in Germany, Switzerland, Poland and elsewhere.

6. I was introduced to Dariusz Robert Maruszak (**"Maruszak"**) in August 1994 at a time when he was in Tokyo and represented to be working for the Bank of

1

Japan as a financial mathematician, portfolio manager and expert in clearing and securities operations with professional ties to London, New York, Japan, Singapore, Hong Kong and other financial centers of the Pacific Rim. Since January 1995 I had personal knowledge of a substantial part of Maruszak's business activities until approximately mid-June 2005, partly through my presence as legal consultant at meetings and negotiations, partly through documents and other evidence provided to me from time to time, and partly through regular communications with and disclosures by Maruszak.

7. In 1995 I was asked by Maruszak to assist him with structuring, preparing, closing and implementation of several large portfolio management transactions involving fixed-income securities in Japan (through Bank of Tokyo, Mitsubishi Bank, Sumitomo Bank, and Norinchukin Bank), Switzerland (UBS) and Germany (Dresdner Bank) regarding projects in Poland and Germany. Upon his unexpected return to Europe he asked me in January 1995 to provide bridge financing on an emergency basis because he was prevented from accessing 16 accounts to which he held title but which were blocked at the time due to a dispute with Japanese partners. In exchange for providing interim financing, he would provide me with project financing in Poland through his 16 large institutional accounts. This was my function in relation to Maruszak until end of 1997.

8. Because I was concerned since the early stages of my acquaintance with Maruszak in 1995 with the security of my loans to his business, I inquired about his personal financial conditions with regularity. Among other disclosures Maruszak made to me was an account at the Bank of Cyprus with a balance of £ 20,000,000 (twenty million pounds Sterling) resulting from a trust, of which he intended to use half to provide for his family and half to cover personal expenses and to repay his debts. It was my understanding that Maruszak's title to the account was being disputed by foreign claimants and that this account, along with others, had been tied up in predictably lengthy legal proceedings. I was shown documents but I no longer recall specifics of

2

the case or of account detail because a significant part of my files has since been destroyed by or at the direction of Maruszak.

9. I met Maruszak's wife Joanna Danuta Maruszak, née Zdziebłowska, in 1995 and I knew her socially quite well until she left the marriage on June 27, 2005. I saw Mrs. Maruszak during longer periods of time as she accompanied her husband during business trips in Poland, Germany and England.

10. As a result of Maruszak's imperious and volatile temper, he was given to not infrequent violent outbursts during which he seriously, credibly and convincingly threatened the lives of others in order to force them to comply with his demands. In a similar fashion, I witnessed Maruszak threaten his wife on numerous occasions with death or serious bodily harm. Those were not idle threats, since Maruszak had committed serious acts of physical violence against several individuals on repeated occasions. resulting in hospitalization.

11. From December 2000 until September 2002, Maruszak resided in New York City where he did business. Maruszak retained several New York law firms as well as consultants including myself in order to create a sophisticated and complex structure of trusts and operating companies in several jurisdictions. Because of the large exposure to cost, efforts and expenses involved on the part of everybody retained by Maruszak, I inquired repeatedly via telephone from Germany about the status of his beneficial assets which had been the reason for my professional involvement with Maruszak in the first place. Maruszak represented at the time that one of the trusts about to be created and for which my advice and support in the capacity of a director of the protector entity had been retained. would be alimented by certain Japanese parties with gold bullion of a fair market value of approximately \$16 billion starting on August 25, 2001. I did, in fact, receive copies of documents showing transfer of legal title to Maruszak's trust structure of a first tranche of gold bullion with a fair market value of \$120 million. I do not have personal knowledge as

to whether Maruszak's trust entity, Olympic Trust, or its wholly-owned subsidiary Galesbury S.A., took physical possession of said bullion.

12. From 1997-2005, Maruszak also represented to be, jointly with Johan Christiaan Hertzog, indirectly in control of \$25 billion in United States Treasury securities held in the street name of The Norinchukin Bank.

13. From at least 1997 until 2005, Maruszak also represented being indirectly in control of (as portfolio manager and with an unresolved beneficial interest in) an account at the Bank of England held in the name of an offshore entity named Donguri with a balance of £156 billion in his capacity of clearing officer for the Bank of Japan and positions held for other Japanese financial institutions.

14. From January 2001 until 2005, Maruszak also represented being tasked with "resolving" over a period of 30 years as portfolio manager on behalf of Japanese interests a debt security issued by the Bureau of the Public Debt, United States Department of the Treasury, to the Empire of Japan in the amount of \$384 billion.

15. I believe that it is likely that Maruszak directly or indirectly controls substantial assets internationally, possibly jointly with others. The reason for my belief is Maruszak's readily apparent uncommon knowledge and expertise in banking, securities and clearing operations as demonstrated in numerous meetings with high level banking executives internationally over the years, as well as his facility and expertise with structuring very complex innovative asset-based financing models and securities operations.

FURTHER AFFIANT SAYETH NOT.

Dated: March, 1ˢᵗ , 2007

Elzbieta Koberstein

4

FEDERAL REPUBLIC OF GERMANY )
LAND BAVARIA )
CITY OF MUNICH ) SS
CONSULATE GENERAL OF THE )
UNITED STATES OF AMERICA )

Sworn to and subscribed before me this

First day of March, 2007

Notary Public                                                    [SEAL]

My commission expires:  n/a

Caroline L. Price
Vice Consul
American Consulate General Munich

## EXHIBIT C

**ASSIGNMENT OF JÓZEF ZDZIEBŁOWSKI
DATED AUGUST 17, 2006**

## ASSIGNMENT OF CLAIM FOR DAMAGES

For good and valuable consideration, receipt of which is hereby acknowledged, on this date I, Józef Zdziebłowski, resident at ul. Strzegomska 276/9, Wrocław, Poland, born June 17, 1930 (**"Assignor"**), hereby assign and transfer to Joanna Danuta Maruszak, resident at New York, New York, U.S.A. born January 8, 1973 (**"Assignee"**), any and all sums of money due or owing to me, and all claims, demands, and cause or causes of action of whatsoever kind and nature that I have had, now have, or may have against Dariusz Robert Maruszak, resident at Wrocław, Poland, born January 22, 1967 (**"Debtor"**) or any other person or persons, whether jointly or severally, arising out of, or for, any loss, injury, or damage sustained by me since 1993 in connection with:

(1) $5,208    cash loans made to Debtor
(2) $11,065 Debtor's international telephone bills
(3) $4,713    replacement of furniture damaged by Debtor

This assignment is without recourse and assignor does not guarantee payment of the assigned claim.

Assignor warrants that he has the right to assign his claim and appoints Assignee as his attorney with power to demand and receive satisfaction of the assigned claim and, in the name of the Assignor, but at Assignee's expense, to sue or enter into any other legal process necessary for the collection of this claim.

WITNESSED this ____17th____ day of August, 2006.


Assignor: Józef Zdziebłowski                              Assignee: Joanna Danuta Maruszak

**EXHIBIT D**

**DIVORCE DECREE DATED MARCH 23, 2006**



**DECD**
JON ERIC GARDE, ESQ.
Nevada Bar No. 5961
6375 S. Pecos Road
Las Vegas, NV 89120
(702) 898-9540
Attorney for Plaintiff

FILED

MAR 27   9 46 AM '06

⟨illegible signature⟩
CLERK

## DISTRICT COURT

## CLARK COUNTY, NEVADA

***

JOANNA D. MARUSZAK,          )
                             )
        Plaintiff,           )
                             )    CASE NO. ⟨illegible⟩ 348439
        vs.                  )
                             )    DEPT. NO.  E
                             )
DARIUSZ R. MARUSZAK,         )
                             )
        Defendant,           )
                             )

## DECREE OF DIVORCE

This cause coming on for summary disposition before the above-entitled court, and after reviewing the pleadings and papers on file, this Court finds as follows:

1.     That this Court has complete jurisdiction in the premises, both as to the subject matter thereof as well as the parties hereto;

2.     That the Plaintiff is now and has been an actual bona fide resident of Clark County, Nevada and has been actually domiciled therein for more than six weeks immediately preceding the commencement of this action;

3.     That the parties were married on the February 16, 1993, in Wroclaw, Poland

1

4.    That there are no minor children as the issue of this marriage, no adopted minor children of the marriage and wife is not currently pregnant.

5.    That there is no community property to divide;

6.    That there are no community debts to be adjudicated by the Court;

7.    That neither party should be awarded spousal support;

8.    That the parties waive their rights to notice of entry of Decree of Divorce, to appeal; to request of findings of fact and conclusions of law; and to move for a new trial.

9.    That the parties have met every condition set forth in NRS 125.181 pursuant to NRS 125.182.

10.    That the parties expressly desire this court to enter a Decree of Divorce pursuant to NRS 125.181(7).

11.    That Plaintiff should be granted a Decree of Divorce for the reasons set forth in the Complaint;

12.    That the Plaintiff resides at 3651 N. Rancho Dr., #118. Las Vegas, Nevada 89130.

13.    That the Defendant last known address is Pilawska 9 St., #3A. Wroclaw, Poland.

14.    That the Plaintiff, Joanna D. MARUSZAK, will retain her present name, and her name will be Joanna D. MARUSZAK.

Therefore, **IT IS ORDERED, ADJUDGED AND DECREED** that the bonds of matrimony now and heretofore existing between the parties are hereby wholly dissolved, set aside and forever held for naught, and an absolute Decree of Divorce is hereby granted

2

1  to the parties, and each of the parties are hereby restored to the status of a single, unmarried

2  person.

3      **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that there is no

4  community property to be adjudicated by the Court.

5

6      **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that there are no

7  community debts to be adjudicated by the Court.

8      **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that neither party

9  should pay spousal support.

10

11      **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Plaintiff,

12  Joanna D. Maruszak, will retain her present name, and her name will be Joanna D,

13  Maruszak.

14      **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Plaintiff

15  shall provide her social security number  to the Court and to the Welfare Division of the

16  Department of Human Resources pursuant to NRS 125.130.  Such information shall be

17

18  maintained by the Clerk in a confidential manner and not part of the public record.

19      DATED s____ 23  March  2006_____.

20

21

22      DISTRICT COURT JUDGE

23  Respectfully Submitted:

24

25  JON ERIC GARDE, Esq.
    Nevada Bar No. 5961
26  6375 S. Pecos Road
    Las Vegas, NV 89120
27  (702) 898-9540
28  Attorney for Plaintiff

3

**EXHIBIT E**

**DIVORCE DECREE DATED APRIL 4, 2006**

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF NEW YORK   )

## **A F F I D A V I T**

Before me, the undersigned notary public, on this twenty-second day of April 2008, personally came Ms. Joanna D. Maruszak, personally known to me, and, being duly sworn, deposed and said:

1. My name is Joanna D. Maruszak. I am of full age. I have personal knowledge of the facts stated herein and the said facts are true and correct.

2. I am fully conversant with the Polish and English languages. I am a native speaker of Polish.

3. I have diligently prepared a translation into the English language of the Polish document attached herewith, which document is a Divorce Decree dated April 4, 2006, Docket No. XIII RC 2587/05 of the District Court in Wroclaw, Poland.

4. I hereby certify that the attached English translation is a true and correct translation of the Polish document herewith attached.

_____
Joanna D. Maruszak

Sworn to and subscribed before me this twenty-second day of April, 2008

_____
Notary Public

My commission expires: 01-22-2011

[Seal]

ALEXANDER MILENKOVIC
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01-MI6053850
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES 01-22-2008 2011

# [TRANSLATION]

**Docket number XIII RC 2587/05**

*/The emblem of Poland/*

## JUDGMENT

## IN THE NAME OF THE REPUBLIC OF POLAND

April 4th, 2006

District Court in Wrocław, Civil Family Department XIII
comprised as follows:

| | |
|---|---|
| Chair: | District Court Judge Krystyna Kalinowska |
| Jurors: | W. Jamontt |
| | A. Kosmulska |
| Court Reporter: | K. Nowak |

after deliberating on April 4th 2006 in Wrocław
on the Complaint of the Plaintiff     Dariusz MARUSZAK
against the Defendant     Joanna MARUSZAK

**to grant a divorce**

I.   adjudicates the dissolution of the marriage contracted on February 16, 1993 in the Civil Records Office in Wrocław, certificate no. 311/1993, between Dariusz Maruszak, born on 01/22/1967 in Wrocław, and Joanna Maruszak born Zdziebłowska, born on 01/08/1973 in Wrocław, with both parties at fault;

II.   finds that the parties do not occupy a common home;

III.   establishes the final costs of the court as PLN300, debited from the provisional court fee, and adjudicates that the Defendant shall pay the Plaintiff PLN380 in compensation for the costs of this lawsuit. ------------------------------

*/round seal with Polish emblem: "District Court in Wrocław 13"/*

*/rectangular stamp: "Certified as conforming with the original by the Clerk of Court"/*
*/sig./*

*/round seal with Polish emblem: "District Court in Wrocław 13"/*

*/rectangular stamp: DISTRICT COURT IN WROCŁAW confirms that this decree is final as of April 26th, 2006.*
*Wrocław, on this 14th of February 2008*
*Judge/*
*/sig./*

Sygn. akt XIII RC 2587/05



# W Y R O K

## W  IMIENIU  RZECZYPOSPOLITEJ  POLSKIEJ

Dnia 4 kwietnia 2006 r.

Sąd Okręgowy we Wrocławiu – Wydział XIII Cywilny Rodzinny
w składzie następującym:

<div style="margin-left:2em">

Przewodniczący:  SSO K. Kalinowska
Ławnicy:              W. Jamontt
                          A. Kosmulska
Protokolant:        K. Nowak

</div>

po rozpoznaniu w dniu  4 kwietnia 2006 r.  we Wrocławiu
sprawy z powództwa      Dariusza MARUSZAKA
przeciwko                    Joannie MARUSZAK

o      r o z w ó d

I.      orzeka rozwiązanie związku małżeńskiego zawartego dnia 16 lutego
        1993 r. w Urzędzie Stanu Cywilnego we Wrocławiu, nr aktu 311/1993
        przez Dariusza Maruszaka ur. 22.01.1967 r. we Wrocławiu z Joanną
        Maruszak  z domu Zdziebłowską ur. 8.01.1973 r. we Wrocławiu z winy
        obu stron;
II.     ustala, że strony nie zajmują wspólnego mieszkania;
III.    wpis ostateczny ustala na kwotę 300,-zł zaliczając wpis tymczasowy
        i zasądza od pozwanej na rzecz powoda 380,-zł tytułem zwrotu kosztów
        procesu.-------------------------------------------------------------------------------



zgodność z oryginałem świadczy
Kierownik Sekretariatu

SĄD OKRĘGOWY WE WROCŁAWIU
stwierdza, że niniejsze orzeczenie
jest prawomocne (natychmiast wykonalne)
z dn. 26.04.06r
Wrocław, dnia...... 14 lutego 2008r.
sędzia

**EXHIBIT F**

**TRANSCRIPT OF DIVORCE PROCEEDING DATED APRIL 4, 2006**

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF NEW YORK    )


## **A F F I D A V I T**


Before me, the undersigned notary public, on this twenty-second day of April 2008, personally came Ms. Joanna D. Maruszak, personally known to me, and, being duly sworn, deposed and said:

1. My name is Joanna D. Maruszak. I am of full age. I have personal knowledge of the facts stated herein and the said facts are true and correct.

2. I am fully conversant with the Polish and English languages. I am a native speaker of Polish.

3. I have diligently prepared a translation into the English language of the Polish document attached herewith, which document is a Transcript of Divorce Proceeding dated April 4, 2006, Docket No. XIII RC 2587/05 of the District Court in Wroclaw, Poland.

4. I hereby certify that the attached English translation is a true and correct translation of the Polish document herewith attached.


_____
                  Joanna D. Maruszak

Sworn to and subscribed before me this twenty-second day of April, 2008


_____
Notary Public

My commission expires: 01 22-2011

[Seal]

ALEXANDER MILENKOVIC
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01-MI6053850
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES 01-22-2009 2011

[TRANSLATION]

**Docket number XIII RC 2587/05**

# TRANSCRIPT

**April 4th, 2006**

Chair
District Court Judge Krystyna Kalinowska

Jurors
Wanda Jarmont
Anna Kosmulska

Court Reporter
Katarzyna Nowak

District Court in Wrocław, Civil
Family Department XIII
at a closed hearing heard
a complaint by Plaintiff
Dariusz Maruszak
against Defendant Joanna Maruszak
to grant a divorce

The hearing started at **9:00 am** – it ended at **9:30 am**.
After the case was called, the following parties appeared:
The Plaintiff, personally and accompanied by attorney Saniewski representing him in this case.
The Curator for the Defendant did not appear – she was notified about the hearing. The Curator submitted an answer to the complaint, whose copy was served upon the attorney for the Plaintiff.

The attorney for the Plaintiff submits a motion to grant a divorce decree with the Defendant recognized as the party at fault, and shows the original of a letter submitted as a copy (attachment 5).

### The Court adjudicated as follows;

**I. to admit the evidence of:**
1. the letter of the Defendant and the internet correspondence dated 08/04/2005 as evidence that she abandoned the Plaintiff
2. the hearing of the parties limited to the Plaintiff's statement.

**II. to grant the Curator Dominika Muszalik a compensation for her services in the amount of PLN100.**

**Plaintiff Dariusz Maruszak, age 39, mathematician, appears and testifies as follows under art. 304 of the Code of Civil Procedure:**
We did not cohabit since 2000. On the other hand, I stayed abroad for 13 years and during that time I saw my wife for 3 years. After the wedding I lived abroad for the entire time, and my wife visited me occasionally. My wife preferred to stay in Poland, to be close to her father. My work consisted of visiting a different country every day. I

1

# [TRANSLATION]

travelled between banks, because I am an investment banker. My wife travelled with me for a year, and then contracted a kidney disease and did not want to travel with me anymore. After my heart attack I decided to return to my home country. I started a business in Poland. My wife was worried that I would start doing business again and that I would be at work all the time. And I really started to do business and dedicated myself to work. I returned to Poland in December 2004. My wife and I travelled within Poland as tourists until March. My wife hoped that I would not work while traveling. That trip was supposed to bring us together. Unfortunately, we did not achieve this goal of my wife. We did not get closer to each other. I missed work. I used to work abroad, in Japan, were the workday lasts 20 hours. I liked that lifestyle, but my wife didn't like it. My wife never worked. She only used my income. When I returned to business, my wife left. She left me a letter with her wedding band and nobody knows where she presently is. Not even her parents. If I knew were she lived I would probably sue her for what she has taken from me. Although I do not know what she took from me. I suppose she has to live off something. I thought my wife was happy with not having to work. My wife used to say that I should stop working altogether, because I already earned enough to live off it. I believe that my wife is the only one at fault because she left me. I worked and was the breadwinner. I live off business dealings. I have companies. My managerial wages amount to PLN2700. I invest huge amounts of money. The company has no income for now.

To the questions of the attorney for the Plaintiff;

I received an internet card from my wife, where it was written that she was leaving me. We don't have any children.

The attorney for the Plaintiff submits a motion for a divorce decree with the Defendant as the party at fault.

**Sygn. akt XIII RC 2587/05**

# PROTOKÓŁ

**Dnia, 4 kwietnia 2006 r.**

Przewodniczący
SSO Krystyna Kalinowska

Sąd Okręgowy we Wrocławiu Wydział XIII Cywilny
Rodzinny
na posiedzeniu przy drzwiach zamkniętych rozpoznał
sprawę z powództwa
**Dariusza Maruszaka**
przeciwko **Joannie Maruszak**
o **rozwód**

Ławnicy
Wanda Jamont
Anna Kosmulska

Protokolant
Katarzyna Nowak

Posiedzenie rozpoczęto o godzinie **9.00** - zakończono o godzinie **9.30**
Po wywołaniu sprawy stawili się:
Powód osobiście wraz z pełn. adw. Saniewskim – ustanowionym w sprawie.
Kurator pozwanej nie stawił się – zawiadomiony o terminie. Złożył odpowiedź na pozew,
której odpis doręczono pełn. powoda.

Pełnomocnik powoda wnosi  o orzeczenie rozwodu  z winy pozwanej i okazuje oryginał listu
złożonego w formie kserokopii (k.5).

## Sąd postanowił;

**I. dopuścić dowód z;**
1.  listu pozwanej i korespondencji internetowej 4.08.2005 r. na okoliczność, że opuściła
powoda
    2.  przesłuchania stron  z ograniczeniem do przesłuchania powoda.

**II. przyznać kuratorowi  Dominice Muszalik wynagr. za podjęte czynności w kwocie 100
zł.**

**Staje powód Dariusz Maruszak, lat   39, matematyk, w trybie art. 304 kpc zeznaje;**
Od 2000 r. nie żyliśmy ze sobą. Natomiast ja przez 13 lat przebywałem za granicą i w tym
czasie przez 3 lata widywałem żonę. Po ślubie cały czas mieszkałem za granicą a żona
przyjeżdżała do mnie sporadycznie. Żona wolała zostać w Polsce, żeby być blisko ojca. Moja
praca polegała na tym, że codziennie byłem w innym kraju. Podróżowałem między bankami,
bo jestem bankierem inwestycyjnym. Żona przez rok podróżowała ze mną a potem
zachorowała na nerki i nie chciała już ze mną podróżować. Po zawale stwierdziłem, ze
wracam do kraju. Rozpocząłem działalność gospodarczą w Polsce. Żona zmartwiła się, że
znowu będę robić biznesy i że będę cały czas w pracy.  A ja faktycznie zająłem się
działalnością gospodarczą i poświęciłem się pracy. Do Polski wróciłem w grudniu 2004 r.
Podróżowaliśmy z żoną po Polsce do marca w celach turystycznych. Żona liczyła na to, ze
podróżując nie będę oddawał się pracy. Ten wyjazd miał nas do siebie zbliżyć. Niestety celu

założonego przez żonę nie osiągnęliśmy. Nie zbliżyliśmy się do siebie. Mnie brakowało pracy. Pracowałem za granicą w Japonii, gdzie się pracuje 20 godzin dziennie. Mnie taki styl życia odpowiadał a żonie to nie odpowiadało. Żona nigdy nie pracowała. Korzystała tylko z moich dochodów. Jak wróciłem do działalności gospodarczej to żona wyjechała. Zostawiła mi list z obrączką i nikt nie wie gdzie obecnie przebywa. Nawet jej rodzice. Jeślibym wiedział gdzie mieszka to pewnie zacząłbym się z nią procesować o to co mi zabrała. Chociaż nie wiem co mi zabrała. Przypuszczam, że musi z czegoś żyć. Myślałem, że żonie jest dobrze z tym, że nie musi pracować. Żona mówiła, żebym w ogóle skończył pracować, bo zarobiłem już tyle, że mogę z tego żyć. Uważam, ze żona zawiniła wyłącznie, bo mnie opuściła. Ja pracowałem i zarabiałem na utrzymanie. Utrzymuję się z działalności gospodarczej. Mam firmy. Moja menagerska wypłata wynosi 2.700 zł. Inwestuję ogromne pieniądze. Firma na razie nie przynosi dochodów.

Na pyt. pełn. powoda;

Otrzymałem kartkę internetową od żony w której było napisane, że odchodzi ode mnie. Dzieci nie mamy.

Pełnomocnik powoda wnosi o orzeczenie rozwodu z winy pozwanej.

